# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARETHA CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-0167-DGK-SSA |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING IN PART AND REMANDING THE COMMISSIONER'S DECISION

Plaintiff Maretha Campbell petitions for review of a partially favorable decision by Defendant, the Commissioner of Social Security. Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-85. The Administrative Law Judge ("ALJ") found that Plaintiff has been disabled since August 4, 2014, due to her age, but not prior thereto. Plaintiff appeals this aspect of the ALJ's decision.

After carefully reviewing the parties' arguments and the record as a whole, the Court finds that substantial evidence supports the ALJ's opinion that Plaintiffs' impairments do not meet or medically equal a listing. The Court also finds, however, that the ALJ failed to adequately explain his conclusion with respect to Plaintiff's RFC. The Commissioner's decision is therefore AFFIRMED IN PART and REMANDED for further explanation.

**Procedural Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary. Plaintiff filed for disability insurance and supplemental security

income in 2010, alleging a disability onset date of November 20, 2009. The Commissioner denied the applications at the initial-claim level, and Plaintiff appealed the denial to an ALJ. The ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. Plaintiff then appealed the Commissioner's decision to this Court, which, upon Defendant's motion, remanded the case under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

While that appeal was pending, Plaintiff filed two additional disability claims—identical to the first—which the Commissioner also initially denied. The Appeals Council directed the ALJ to consolidate these and the remanded claims and issue a new decision. The ALJ held two hearings and, in November 2017, issued a "partially favorable" decision. He found that Plaintiff had been disabled since August 4, 2014, but not prior thereto. The Appeals Council again declined to review the matter, and so judicial review is now appropriate. *See* 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, a court considers evidence that supports and detracts from the Commissioner's decision. *Id.* A court must "defer heavily" to the Commissioner's findings and conclusions, *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015), and may reverse the Commissioner's decision only if it falls outside of the available zone of choice. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision is not outside this zone simply because the evidence also points to an alternate outcome. *Id.*

**Discussion**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Here, the ALJ found that Plaintiff suffered from several severe impairments, including, among others, morbid obesity, fibromyalgia, and sleep apnea. The ALJ concluded that these impairments did not meet or medically equal the severity of a listed impairment, and he found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. He also concluded that Plaintiff became disabled on August 4, 2014, when she turned fifty.

Plaintiff contends that the ALJ erred in finding that her obesity and fibromyalgia did not meet listings 1.02A and 14.09D, respectively, whether considered individually or in combination with her other impairments. She also argues that the ALJ erred in formulating her RFC.

**I.   The ALJ properly determined that Plaintiff's impairments were not medically equivalent to a listed impairment.**

At step three, the ALJ determines whether a claimant "meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1." *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(a)(4)(iii)). "The listings define impairments that would prevent an adult, regardless of his age, education, or work

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). Hence, they "should not be read expansively." *Johnson v. Astrue*, 816 F. Supp. 2d 752, 774 (W.D. Mo. 2011) (internal quotation and citation omitted). To establish that an unlisted impairment, or combination of impairments, equals a listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a)).

### A. Plaintiff's obesity was not medically equivalent to listing 1.02A.

Obesity is not a listed impairment. Social Security Ruling ("SSR") 02-1P[2] provides that the Commissioner will find it medically equivalent to listing 1.02A, which covers major joint malfunction, if it results in "an inability to ambulate effectively." Ineffective ambulation refers to "an extreme limitation of the ability to walk" that generally requires the aid of hand-held assistive devices. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(1); *Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007). Examples of ineffective ambulation include the inability "to walk without the use of a walker, two crutches, or two canes, . . . to walk a block at a reasonable pace on rough or uneven surfaces, . . . to use standard public transportation; . . . to carry out routine ambulatory activities, [and] to climb a few steps at a reasonable pace without the use of a single hand rail." App. 1 § 1.00(B)(2)(b)(2).

Substantial evidence supports the ALJ's finding that Plaintiff's obesity, even when coupled with her other impairments, does not equal listing 1.02A. For example, in 2011 she told a consultative examiner that she did not require an assistive device to help her ambulate. R. at 431. The examiner reported that her "gait and station were fairly normal," that she was "able to walk on heels and toes," and that she was able to tandem walk "without too much difficulty." R. at 432.

---

[2] Although the Commissioner has rescinded SSR 02-1P, the Court applies the rule in effect at the time the agency issued its decision. SSR 19-2P (S.S.A.), 2019 WL 2374244.

In 2012, her rheumatologist observed that she was able to enter the clinic with ease. R. at 670. Her gait was again reported normal in 2013, and, in July 2014, one month before the ALJ found that she became disabled, an examiner reported that he did not believe that she needed an ambulatory-assistance device. R. at 1654-55, 1798. He stated his belief that "she can stand and walk for approximately thirty minutes at one time before taking a break," and he noted that "[s]he is able to travel and use public transportation without any difficulty." R. at 1655. The following year, an examiner noted that Plaintiff's gait and walking were normal and that she was "able to participate in [an] exercise program." R. at 1738. Plaintiff points to evidence suggesting more restricted ambulation, but the Court "may not reverse merely because substantial evidence also exists that would support a contrary outcome." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

### B. Plaintiff's fibromyalgia was not medically equivalent to listing 14.09D.

Although fibromyalgia is not a listed impairment, it is a chronic condition that "may be disabling." *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (citing *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005)). SSR 12-2P governs the Commissioner's consideration of fibromyalgia. SSR 12-2P (S.S.A.), 2012 WL 3104869. It identifies listing 14.09D, which covers inflammatory arthritis, as a possible equivalent. Listing 14.09D requires Plaintiff to prove repeated manifestations of fibromyalgia that are medically equivalent to repeated manifestations of inflammatory arthritis, with at least two constitutional symptoms and a marked limitation of daily living or social functioning. App. 1 § 14.09(D); *Wyman v. Berryhill*, No. 4:17-cv-04174-VLD, 2018 WL 4016614, at *21-22 (D.S.D. Aug. 22, 2018) (explaining these requirements). Listing-level severity is shown for 14.09D by "various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs." App. 1 § 14.00(D)(6)(e)(ii).

5

Plaintiff has not established that she meets this listing. She argues simply that she has fibromyalgia, experiences fatigue and malaise, and that her impairments limit her social functioning. But "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled," *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011), and Plaintiff ignores entirely listing 14.09D's requirement of "repeated manifestations of inflammatory arthritis." *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013) ("The claimant bears the burden of demonstrating that his impairment matches *all* the specified criteria of a listing." (emphasis added) (citation omitted)); *see also Patrick v. Saul*, No. 4:18-cv-04150-VLD, 2019 WL 3824254, at *29 (D.S.D. Aug. 15, 2019) (affirming the ALJ's decision at step three because the claimant "never discusses the requirements of Listing 14.09D and compares that criteria to her own medical findings and explains how she meets or equals Listing 14.09D"). Thus, while the ALJ could have more thoroughly explained his reasoning for finding that Plaintiff's fibromyalgia does not equal listing 14.09D, the Court finds that Plaintiff has not carried her burden of showing otherwise.

## II. The ALJ failed to adequately explain his findings as to Plaintiff's RFC.

The ALJ's decisions at steps four and five are based on a claimant's RFC—the most a claimant can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a). An ALJ determines a claimant's RFC based on all relevant evidence, *id.*, including medical records, physicians' opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Here, the ALJ concluded that Plaintiff had the RFC to lift and carry fifteen pounds occasionally and ten pounds frequently, to stand and walk for three hours out of eight, and to perform occasional postural movements. He based this decision on the opinion of Dr. Winkler, a non-treating and non-examining physician to whom the ALJ accorded great weight. However, such opinions "ordinarily do not constitute substantial evidence on the record as a

whole." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see also Shanto v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Moreover, the weight an ALJ should attribute to sources like Dr. Winkler depends "on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). Even though Dr. Winkler reviewed Plaintiff's medical history, she did not explain how she reached her specific conclusions as to how much Plaintiff could lift and how long she could sit and stand. And as far as the Court can tell, the ALJ appears simply to have adopted Dr. Winkler's conclusory findings. *See Hilburn v. Colvin*, 6:14-cv-03409-MDH, 2016 WL 356045, at *2 (W.D. Mo. Jan. 26, 2016) (finding that the opinion of a non-examining psychologist did not provide an adequate basis for the claimant's RFC).

Granted, an ALJ's RFC formulation will be nonetheless upheld if substantial evidence supports it. *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) ("[A]n ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination." (internal quotations and citation omitted)); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (evaluating whether the ALJ's errors were harmless). The Commissioner argues that, here, objective physical findings of Plaintiff's motor strength, tendon reflexes, and joint range of motion support the RFC. *See, e.g.*, R. at 1654. Yet it is not clear that this evidence has any bearing on Plaintiff's ability to work, given that fibromyalgia is not characterized by objective symptoms, but by "widespread pain in the joints, muscles, tendons, or nearby soft tissues." SSR 12-2P. Hence, fibromyalgia patients typically "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (internal quotations and citation omitted); *accord Green–Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003).

Thus, as it stands the Court is unable to discern whether the ALJ relied on any evidence other than Dr. Winkler's unexplained opinion in formulating Plaintiff's RFC. *See Scott*, 529 F.3d at 822 (providing that the ALJ's opinion must allow for meaningful judicial review). In light of this deficiency, the Court will remand the proceeding for a proper explanation of the evidentiary basis for Plaintiff's functional limitations. If there is insufficient medical evidence in the record to determine the RFC, the ALJ should consider ordering a consultative examination.[3] Of course, this is not to say that an award of benefits is appropriate or that Plaintiff's myriad remaining arguments, which the Court does not address, have merit. The Court simply requires additional explanation of the evidence supporting the ALJ's determination to conduct a meaningful review.

**Conclusion**

Accordingly, the Commissioner's decision that Plaintiff was not disabled between November 20, 2009, and August 4, 2014, is hereby AFFIRMED IN PART and REMANDED for further explanation of the evidence supporting Plaintiff's RFC.

**IT IS SO ORDERED.**

Date: <u>August 22, 2019</u>　　　　　　　　　　　<u>/s/ Greg Kays</u>
　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[3] The Court recognizes that such an examination may be of limited value, however, since the disputed portion of the ALJ's decision concerns whether Plaintiff was disabled between 2009 and 2014.